## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## 1:04cv237

| | | |
|---|---|---|
| MARVIN RAY FOWLER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| Vs. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| SESSOMS AND ASSOCIATES, P.A., | ) | |
| operating as SESSOMS AND ROGERS, | ) | |
| P.A.; STUART M. SESSOMS, JR., | ) | |
| operating as SESSOMS AND ROGERS, | ) | |
| P.A.; LEE C. ROGERS, operating as | ) | |
| SESSOMS AND ROGERS, P.A.; CHASE | ) | |
| MANHATTAN BANK, USA, N.A.; THE | ) | |
| HONORABLE ROBERT S. CILLEY, | ) | |
| in his official capacity; THE HONORABLE | ) | |
| KEITH H. MELTON, in his official capacity;) | | |
| GREAT AMERICAN INSURANCE | ) | |
| COMPANY, as surety for judicial | ) | |
| defendants; SHERIFF DANIEL J. GOOD, | ) | |
| in his official capacity; TRAVELERS | ) | |
| CASUALTY AND SURETY COMPANY | ) | |
| OF AMERICA, as surety for Sheriff | ) | |
| Daniel J. Good; and SOUTHTRUST BANK, | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the court on the following pending motions:

(1)   defendant Great American Insurance Company's Motion to Dismiss;

(2)   defendant Great American Insurance Company's Motion for Summary Judgment;

(3)   defendant Chase Manhattan Bank' Motion to Dismiss;

(4)   defendant Travelers Casualty & Surety's and Daniel J. Good Motion to Dismiss;

(5)   defendants Melton, et al.'s Motion to Dismiss; and

(6)      defendant Sessoms and Associates, *et al.'s* Motion for Judgment on the Pleadings.

The court has carefully reviewed the motions and respective briefs in support, opposition, and reply. In addition, a hearing was conducted on April 26, 2005, on the pending motions, which was electronically transcribed. After careful consideration of the briefs and arguments of counsel, and having closely reviewed relevant case law, the undersigned respectfully submits to the district court the following findings, conclusions, and recommendations.

## FINDINGS AND CONCLUSIONS

### I.    **Nature of the Action**.

Marvin Ray Fowler, a judgment debtor, brings this civil rights action against his judgment creditor, its attorneys, a state judge and clerk who issued process, a sheriff whose deputy served such process and seized assets, the sheriff's professional insurer, the state's insurance carrier (which insures the state for acts of employee dishonesty, not malfeasance), and the bank from which his funds were seized. In a 43 page, 154 paragraph Complaint, plaintiff contends that North Carolina's post-judgment collection statute is unconstitutional because it fails to give him notice of state and federal exemptions and an opportunity for a prompt hearing, and violates both substantive and procedural due process. Plaintiff also asserts that the alleged acts of the creditor bank and its retained attorneys violated the federal Fair Debt Collection Procedures Act. Finally, plaintiff has asserted 12 claims against defendants under state law.

At the heart of the Complaint is a challenge to the constitutionality of North Carolina's post-judgment collection statutes, which include Chapters 1C-1601 through 1C-1604 ("Article16"), 1-302.1through 1-324.7 ("Article 28"), and 1-352 through1-368 ("Article

31") of the North Carolina General Statutes.

Both of plaintiff's due process claims pivot on his reading of the decision of the Court of Appeals for the Fourth Circuit in <u>Reigh v. Sleigh</u>, 784 F.2d 1191 (4th Cir. 1986), which held in relevant part that in Maryland, "a notice which advises the judgment debtor that there are <u>state and federal exemptions</u> that may be available to him, coupled with notice of the right to contest the attachment, meets the requirements of due process." <u>Id.</u>, at 1197 (emphasis added). As will be discussed at greater length below, plaintiff misreads <u>Reigh</u> as requiring state courts to advise judgment debtors of *federal* exemptions and to provide a hearing *after* seizure, inasmuch as <u>Reigh</u> dealt with a post-deprivation statutory scheme that recognized federal exemptions, thereby creating a property interest, and did not provide the preferable pre-deprivation notice and opportunity to heard found in North Carolina.

The undersigned will recommend, initially, that this court abstain from hearing the federal constitutional challenges to state law asserted in this matter. Further, the undersigned will recommend in the alternative that the federal constitutional claims be dismissed for failure to allege cognizable constitutional causes of action. As to the supplemental claims, the undersigned will recommend dismissal of most of the state causes of action under North Carolina law for failure to state cognizable claims.

## II.    Jurisdiction.

Plaintiff invokes the federal-question jurisdiction of this court under 28, United States Code, Section 1331, by bringing this action under 42, United States Code, Section 1983, along with claims under the federal Fair Debt Collection Practices Act. Plaintiff has also invoked the supplemental jurisdiction of this court as to his 12 state law claims. While the undersigned finds that jurisdiction exists in this court, the undersigned will address whether

such jurisdiction should be exercised or abstained from, *infra*.

## III. Plaintiff's Causes of Action.

In all, plaintiff has asserted 15 causes of action against the various defendants. Such causes of action fall into two categories, federal claims and supplemental state-law claims:

### Federal Causes of Action

1.  Civil rights claim under 42 U.S.C. §1983 alleging a violation of substantive due process rights based on invocation of Articles 16, 28 and 31;

2.  Civil rights claim under 42 U.S.C. §1983 alleging a violation of procedural due process rights based on invocation of Articles 16, 28, and 31;

3.  A claim under the Fair Debt Collection Practices Act.

### Supplemental, State Law Causes of Action

1.  Declaratory relief.
2.  Injunctive relief.
3.  Conversion.
4.  Fraud.
5.  Interference with Contract.
6.  Invasion of Privacy.
7.  Obstruction of Justice.
8.  Abuse of Process.
9.  Violation of N.C.Gen.Stat. § 75-50, *et seq*.
10. Claim against Travelers as Sheriff Good's surety.
11. Breach of contract.
12. Unfair Trade Practice.

Inasmuch as not all defendants have been made party to all claims, the undersigned will address the motions by considering each cause of action *seriatim*.

## IV. Applicable Standards of Review

### A. Rule 12(b)(6) Standard

Where a defendant contends that a plaintiff has failed to state a cognizable claim, Rule 12(b)(6) authorizes dismissal based on a dispositive issue of law. <u>Neitzke v. Williams</u>, 490 U.S. 319, 109 S.Ct. 1827, 1832 (1989); <u>Hishon v. King & Spalding</u>, 467 U.S. 69, 73 (1984); <u>Conley v. Gibson</u>, 355 U.S. 41 (1957). As the Court discussed in <u>Neitzke</u>:

> This procedure [for dismissal], operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and fact finding. Nothing in Rule 12(b)(6) confines its sweep to claims of law which are obviously insupportable. On the contrary, if as a matter of law "it is clear that no relief could be granted under any set of facts . . . a claim must be dismissed, without regard to whether it is based on outlandish legal theory . . . . What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."

Id., at 1832 (citation omitted). Dismissal of a complaint is proper under Rule 12(b)(6) where it is clear that no set of facts consistent with the allegations in the plaintiff's complaint could support the asserted claim for relief. Taubman Realty Group LLP v. Mineta, 320 F. 3d 475, 479 (4th Cir. 2003); Migdal v. Rowe Price-Fleming Intl Inc., 248 F. 3d 321, 325-36 (4th Cir. 2001).

While the court accepts factual allegations in the complaint as true and considers the facts in the light most favorable to a plaintiff in ruling on a motion to dismiss, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Eastern Shore Mkt.'s Inc. v. J.D. Assoc.'s, LLP, 213 F. 3d 175, 180 (4th Cir. 2000).

> The presence of a few conclusory legal terms does not insulate a complaint from dismissal under Rule 12(b)(6) when the facts alleged in the complaint cannot support the legal conclusion. And although the pleading requirements of Rule 8(a) are very liberal, more detail often is required than the bald statement by plaintiff that he has a valid claim of some type against defendant. This requirement serves to prevent costly discovery on claims with no underlying factual or legal basis.

Migdal, at 326 (citations and internal quotations omitted). In addition, a court cannot "accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." Venev v. Wyche, 293 F. 3d 726, 730 (4th Cir. 2002) (citations and internal quotations omitted). For the limited purpose of ruling on defendants' motions, the court has accepted as true the facts alleged by plaintiff in the complaint and will view them in a light most favorable to plaintiff, *infra*.

**B.    Judgment on the Pleadings Standard**

The motion for judgment on the pleadings, filed by the Sessoms defendants, is brought pursuant to Federal Rule of Civil Procedure 12(c), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." The same standard is applied to Rule 12(c) motions as to those brought pursuant to Rule 12(b)(6). <u>Burbach Broadcasting Co. of Delaware v. Elkins Radio</u>, 278 F.3d 401, 405 (4th Cir.2002).

A motion pursuant to Rule 12(c) does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. A Rule 12[c] motion should only be granted if, after accepting all well pleaded allegations in the plaintiff's Complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of [its] claim entitling [it] to relief.... [H]owever, [ ] for the purposes of Rule 12[c], [the Court is] not required to accept as true the legal conclusions set forth in a plaintiff's complaint. <u>Edwards v. City of Goldsboro</u>, 178 F.3d 231, 243 (4th Cir.1999).  <u>See</u> <u>Volvo Trademark Holding Aktiebolaget v. CLM Equipment Company, Inc.</u>, 236 F.Supp. 2d 536, 539-40 (W.D.N.C. 2002).

**V.    Summary of Facts Alleged By Plaintiff**

The undersigned will attempt to briefly summarize plaintiff's 43 page complaint for the limited purpose of reviewing the pending motions and to aid further review by other courts.

On October 30, 1997, First Deposit National Bank ("First Bank") represented by Stuart M. Sessoms, Jr., an attorney, instituted an action in the North Carolina General Court of Justice, District Court Division for Rutherford County, against the plaintiff seeking to recover a money judgment on an account.  (Compl., ¶20).  A judgment by default was issued

against the plaintiff on January 7, 1998. (Compl., ¶ 21).  On November 27, 2002, First Bank, through Sessoms, assigned the judgment to Chase.  (Compl., ¶ 22).

Between January 7, 1998 until March 7, 2003, Mr. Sessoms requested that Mr. Melton institute exemption proceedings against plaintiff pursuant to Article 16 of Chapter 1C of the North Carolina General Statutes. (Compl., ¶ 25).  These proceedings were instituted on nine separate occasions. Id. Sessoms also caused Melton to institute execution proceedings against plaintiff pursuant to Article 28, but no assets were located and the judgment against the Plaintiff remained unsatisfied.  (Compl., ¶¶ 26-27).

On May 20, 2003, at the request of Mr. Sessoms, Rutherford County Assistant Clerk of Court Shirley Bailey ("Bailey") issued to the plaintiff a notice of right to have exemptions designated and a motion to claim property pursuant to Article 16, all of which was prepared by Sessoms. (Compl., ¶ 29).  Those documents were served upon the plaintiff pursuant to Chapters 1C-1603(a) and 1A-1, Rules 4, by certified mail.  The notice and motion sent by certified mail were accepted by plaintiff's friend, Peggy Flynn, who had permission to receive the plaintiff's mail. (Compl., ¶ 29).  Despite this service, plaintiff contends he  had no knowledge[1] of the exemption notice and motion until after November 4, 2003, the date on which the sheriff seized plaintiff's bank account.  (Compl., ¶ 30).   The plaintiff did not file a motion with the Clerk of Superior Court to claim any exemptions as required Chapter 1C-1603.

On July 14, 2003, Judge Cilley issued an order ("July 14th Order") authorizing Sheriff Good to levy under the Writ of Execution upon any and all bank accounts "which are held by and owed to the Defendant by any bank . . . or other financial institution in Rutherford

---

[1]	In North Carolina, a defendant cannot claim lack of knowledge where he has been served in accordance with Rule 4, North Carolina Rules of Civil Procedure.

County." (Compl., ¶ 33). The July 14th Order signed by Judge Cilley referenced that it was issued pursuant to Chapter 1-362, and required banks and financial institutions in Rutherford County to cooperate with Sheriff Good in providing information about assets held by the plaintiff. (Compl., ¶33). The July 14th Order further directed these banks and financial institutions to freeze plaintiff's assets, to deliver all monies to Sheriff Good, and not release any monies to the plaintiff, "except to the extent that said assets exceed the amount of the Judgment, inclusive of all costs and Sheriff's commissions." (Compl., ¶33).

On August 27, 2003, pursuant to Sessoms' request, Bailey issued a Writ of Execution against plaintiff's property ("August 27th Execution") on a form supplied by the North Carolina Administrative Office of the Courts. (Compl., ¶38). During this time, Plaintiff had a bank account with Southtrust. (Compl., ¶39).

On November 4, 2003, Rutherford County Deputy Sheriff, Corporal Parker ("Parker") presented the July 14th Order and August 27th Execution to Southtrust and directed Southtrust to comply with its terms. (Compl., ¶ 47). Under the authority of the July 14th Order and August 27th Execution, Parker caused Southtrust to place a hold on all funds in the plaintiff's account. (Compl., ¶48). "In compliance with the directive and levy made by Corporal Parker," Southtrust debited plaintiff's account in the amount of $3,778.55, and delivered the debited funds to Parker. (Compl., ¶¶ 49-50). Parker deducted the Sheriff's commission and returned the August 27th Execution and balance seized of $3,671.59 to Clerk Melton. (Compl., ¶51). Melton delivered this balance to Sessoms on December 9, 2003. (Compl., ¶ 52).

On November 4, 2003, the same day Parker directed Southtrust to comply with the July 14th Order and August 27th Execution, Southtrust sent plaintiff a letter notifying plaintiff that a "Summons of Garnishment" had been received by Southtrust and that Southtrust was

prohibited from paying debts against the funds held. (Compl., ¶54). Plaintiff later contacted Southtrust and was told that Southtrust was required to pay the funds from the account pursuant to the execution served upon it by the Sheriff's department, and there was nothing that Southtrust could do to prevent the taking of plaintiff funds. (Compl., ¶ 55). Later, on January 8, 2004, February 9, 2004, and April 12, 2004, in an attempt to collect funds to satisfy the judgment against plaintiff, Sessoms and Associates informed plaintiff that plaintiff still owed money on the judgment. (Compl., ¶¶ 63-65). Sessoms and Associates allegedly misrepresented the amount due on the judgment and falsely and deceptively concealed plaintiff's rights in those letters. (Compl., ¶¶63-65). The judgment against the plaintiff remains unsatisfied. (Compl., ¶100).

Plaintiff has settled his claims against Southtrust Bank and conceded that the Great American Insurance Company's motion to dismiss should be allowed.

## VI. Abstention.

### A. Introduction

The first issue to be determined in this case is whether or not the federal courts should abstain in this matter. In his Complaint, plaintiff seeks have the federal courts interfere in a civil judgment enforcement action that is ongoing in the North Carolina state courts. The plaintiff asks that the federal courts declare that Articles 28 and 31 of Chapter 1 of the North Carolina General Statutes, as well as Article 16 of Chapter 1C, are unconstitutional as enacted by the North Carolina legislature and explained by the North Carolina courts. The plaintiff also requests that the federal courts declare that the " Order In Aid" entered by Judge Cilley be declared "void" as a matter of law. Complaint, at ¶ 115(c).

Two doctrines against federal court interference in state proceedings indicate that the federal court should abstain in this matter. These doctrines are set forth in <u>Younger v. Harris</u>,

401 U.S. 37 (1971), known as the <u>Younger</u> doctrine, and in <u>Rooker v. Fidelity Trust Co.</u>, 263

US 413 (1923) and <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 426 (1983),

known as the <u>Rooker/Feldman</u> doctrine.

The abstention doctrine set forth in <u>Younger</u> has been recently described and set forth

by the Court of Appeals for the Fourth Circuit in <u>Moore v. City of Asheville</u>, 396 F.3d 385,

390 (4th Cir. 2005):

> The federal court should abstain from interfering in a state proceeding, even
> though it has jurisdiction to reach the merits, if there is (1) an ongoing state
> judicial proceeding, instituted prior to any substantial progress in the federal
> proceeding; that (2) implicates important, substantial, or vital state interests;
> and (3) provides an adequate opportunity for the plaintiff to raise the federal
> constitutional claim advanced in the federal lawsuit. <u>Nivens v. Gilchrist</u>, 319
> F.3d 151, 153 (4th Cir. 2003)(citing <u>Middlesex County Ethics Comm. v.
> Garden State Bar Ass'n</u>, 457 U.S. 423, 432 (1982)).

While <u>Younger</u> was concerned with criminal proceedings, such abstention is fully

applicable to non-criminal proceedings when important state interests are involved. In <u>New

Orleans Public Service, Inc. v. Council of New Orleans</u>, 491 U.S. 350 (1988) (hereinafter

"<u>NOPSI</u>"), the United States Supreme Court applied <u>Younger</u> abstention doctrine to "civil

proceedings involving certain orders that are uniquely in furtherance of the state courts'

ability to perform their judicial functions." <u>Id.</u>, at 368.

The same Court also required dismissal of a Section 1983 action brought by a losing

party in a state court action, who sought to enjoin the state procedures that would be used for

enforcing the judgment rendered against it in state court. <u>Penzoil Co. v. Texaco, Inc.</u>, 481

U.S. 1 (1987). The <u>Penzoil</u> Court applied the <u>Younger</u> abstention doctrine to federal cases

where the underlying state action was a judgment enforcement action against the plaintiff,

which is the same factual situation which is presented by the plaintiff's Complaint. In

<u>Penzoil</u>, the Court pointed out that an important reason for abstention was to avoid

unwarranted determination of federal constitutional questions.

> When federal courts interpret state statutes in a way that raises federal constitutional questions, 'a constitutional determination is predicated on a reading of the statute that is not binding on the state courts and that may be discredited at any time - - thus essentially rendering the federal court decision advisory and the litigation underlying it meaningless.'

Id., at 11.  The Court pointed out that Texaco had chosen not to present to the Texas courts the constitutional claims asserted in the case, making it impossible to be certain that governing Texas statutes and procedural rules actually raised the claims.  Id.  The same procedural and factual situation is presented here.  The Court also pointed out that the Texas Constitution contained an "open courts" provision, which addressed Texaco's claims more specifically than the Due Process Clause of the fourteenth amendment to the United States Constitution.  Article I, Paragraph 13, of the Texas Constitution provides "all courts shall be open, and every person for an injury done him in his lands, goods, personal reputation, shall have remedy by due course of law."  Tex. Const. Art. I, § 18.  In comparison, Article I, Section 18 of the North Carolina Constitution provides, as follows: "all courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay."  N.C. Const. Art. I, § 18.  When plaintiff's state remedies are considered from the vantage point of the North Carolina Constitution, it appears that there is more than an adequate opportunity for the plaintiff to raise his federal constitutional claims in state court.

A similar factual setting was presented in Judice v. Vail, 430 U.S. 327 (1977).  In Judice, supplemental proceedings were instituted in an attempt to collect a judgment issued in New York's state courts.  The defendant refused to comply with a subpoena and Order to appear for the taking of his deposition, which was for the purpose of requiring him to give information relevant to the satisfaction of the judgment rendered against him.  It appears that

these proceedings are very similar to procedures that may be used in North Carolina state court "supplemental proceedings." N.C.Gen.Stat. § 1, Art. 31. The judgment defendant was then cited for contempt for failure to appear; however, the defendant then filed an action in the United States District Court alleging that the state procedures were unconstitutional, seeking an injunction to prevent the application of the state statutes to him. The United States Supreme Court held that the district court should have dismissed the Complaint pursuant to the <u>Younger</u> abstention doctrine. In addressing the issue, the Court spoke of the "vital consideration" behind the <u>Younger</u> doctrine, which invoked the notion of comity.

> The notion of 'comity,' that is, a proper respect for state functions, recognition of the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fair best if the States and their institutions are left free to perform their separate functions in their separate ways.

<u>Judice</u>, at 1217 (citation omitted).

**B.     Application of <u>Younger</u>**

In applying the three-prong test for determining whether <u>Younger</u> abstention is appropriate, the undersigned has heeded the decisions in <u>Moore</u> and <u>Middlesex</u>, which provide guidance of avoidance of a mechanical application of a multi-factor test in favor of a contextual examination. The plaintiffs in <u>Middlesex</u> rather than avail themselves of the processes available in a state proceeding, declined to file an answer to state bar disciplinary charges, but instead filed a lawsuit in federal court seeking to enjoin the state bar proceedings. They contended that the bar's disciplinary rules violated their first amendment rights. <u>Middlesex</u>, at 429. After finding first that the federal action would interfere with the state proceeding, the court held: "the question in this case is threefold: first, do state disciplinary proceedings within the constitutionally prescribed jurisdiction of the State Supreme Court constitute an ongoing state judicial proceeding; second, do the proceedings

implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise constitutional challenges." Id. These are the same tests set forth in Moore.

In this case, a similar inquiry can be formulated: first, does a state court post-judgment enforcement action constitute an ongoing state judicial proceedings; second, do the proceedings implicate important state interests; and third, is there an adequate opportunity in the state proceedings to raise plaintiff's constitutional challenges.

First, the plaintiff's complaint makes clear that the proceedings now pending in Rutherford County are ongoing judicial proceedings. The plaintiff asks this federal court to "void" the "Order in Aid" issued by the North Carolina district court. In his Complaint, plaintiff alleges in eleven different paragraphs that the "Order in Aid" is "void." Complaint, at ¶ 71(C), 72(C), 73(F), 74(E), 75(D), 76(G), 77(E), 78(J), 79(C), 80(B), & 81(G). Further in his Complaint, plaintiff seeks injunctive relief to prevent application of the state-court Order, thus showing that even plaintiff considers that the proceedings in Rutherford County are ongoing judicial proceedings.

Second, the proceedings involve a substantial state interest inasmuch as the State of North Carolina has a very real interest in seeing that the judgments of its courts are enforced, that debts are collected in a lawful manner, and that the rights of judgment debtors are protected. See Trainor v. Hernandez, 431 U.S. 434 (1977) (applying Younger to a constitutional challenge to a state attachment statute); Penzoil, supra (applying Younger to judgment enforcement proceedings). The economic stability of the State of North Carolina depends in large part on the ability of one party to obtain a loan or credit from another. To completely abrogate and declare unconstitutional the statutes and case law concerning the collection of debt would be a matter of important state interest, which should be ruled upon

by the North Carolina courts. As the Court of Appeals for the Fourth Circuit held in Harper

v. Public Service Com'n of WVA, 396 F.3d 348 (4th Cir. 2005):

> when an interest central to a case implicates the sovereignty and dignity of a state, and when the other requirements set forth in Middlesex County are met, federal courts should abstain. Interests like education, land use law, family law, and criminal law lie at the heart of state sovereignty, and a failure to abstain in the face of ongoing state proceedings would disrespect the allocation of authority laid in place by the Framers. In other words, that which must be respected through "comity" is identical to the traditional "areas of paramount state concern," and also the same as the "important state interests" test . . . . When a state interest does not fit one of these characterizations, it will likely fail to satisfy any other, for they all are shorthand for the structural values of "Our Federalism" that Justice Black described.

Id., at 354 (citations omitted). Unlike the right to contract with West Virginia towns for

waste removal which was at issue in Harper and found not to be a substantial state interest,

enforcement of judgments and the orderly collection of judgment debt "lie at the heart of

state sovereignty." Id.

Third, there is an adequate opportunity to raise the constitutional challenge to the

North Carolina statutes and the implementing notices, that plaintiff has presented herein, to

the North Carolina courts. First of all, the plaintiff could have appealed the "Order in Aid"

and its issuance to the North Carolina Court of Appeals. More importantly, the North

Carolina Rules of Civil Procedure *presently* provide plaintiff with an opportunity to raise his

constitutional challenges in the state courts. Rule 60(b)(3) & (4) of the North Carolina Rules

of Civil Procedure appear to fit directly with the allegations of the plaintiff's Complaints.

Under Rule 60(b)(3) a party may move for relief from an Order upon the grounds of "fraud,

misrepresentation, or other misconduct of an adverse party." N.C.R.Civ.P. 60(b)(3). In his

Complaint, plaintiff makes allegations of fraud against the Sessoms defendants in paragraphs

82 through 91 of his Complaint. Complaint, at ¶¶ 82-91. Plaintiff even alleges that the

North Carolina Rules of Civil Procedure have been violated by the Sessoms defendants in

obtaining the "Order in Aid." At such time as plaintiff makes his Rule 60(b)(3) motion in state court seeking relief from the "Order in Aid," he can assert his constitutional challenges. Rule 60(b)(3) provides that such a motion must be made within one year. N.C.R.Civ.P. 61(a)(1). The fact that plaintiff did not elect to file such a motion does not preclude abstention. Moore, supra, at 385. An *opportunity* to present federal claims is all that is necessary to satisfy Younger abstention. See Judice, supra, at 1218.

In addition and most importantly, the plaintiff can *still* bring his constitutional challenge in state court pursuant to Rule 60(b)(4). Based upon a motion alleging that the "Order in Aid" is void, the one year statute of limitations does not apply to a motion made upon the grounds that the judgment is void. As stated previously, plaintiff has alleged eleven times that the "Order in Aid" is void. Through a Rule 60(b)(4) motion alleging exactly what plaintiff has herein alleged eleven times, the federal court will not called to interfere with the sovereign legislative acts of the State of North Carolina or to interpose an advisory opinion that may be inapposite to North Carolina case law. Judice, supra. The failure of the plaintiff to avail himself of such opportunities does not mean that the state procedures were inadequate. Judice, supra, at 1218.

Having satisfied the three-prong test of Younger, the undersigned will respectfully recommend that this court abstain from hearing plaintiff's first two causes of action.

### C.    Application of Rooker-Feldman

The doctrines of abstention as set forth in Feldman and Rooker also indicate that abstention, thus dismissal, of plaintiff's first and second federal causes of action should be ordered in this case. The Court of Appeals for the Fourth Circuit summarized the Rooker/Feldman doctrine in American Reliable Insur. Co. v. Stillwell, 336 F.3d 311 (4th Cir. 2003), as follows:

Under the <u>Rooker-Feldman</u> doctrine, "a party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." . . . . The <u>Rooker-Feldman</u> doctrine, therefore, preserves a fundamental tenet in our system of federalism that, with the exception of *habeas* cases, appellate review of state court decisions occurs first within the state appellate system and then in the United States Supreme Court. A litigant may not circumvent these jurisdictional mandates by instituting a federal action which, although not styled as an appeal, "amounts to nothing more than an attempt to seek review of [the state court's] decision by a lower federal court." For purposes of <u>Rooker-Feldman</u>, "[t]he controlling question ... is whether a party seeks the federal district court to review a state court decision and thus pass upon the merits of that state court decision."

<u>Id.</u>, at 316 (citations omitted). Although federalism and comity surely attend application of the <u>Rooker-Feldman</u> doctrine, the doctrine operates principally to preserve the structure of appeals from state courts to the United States Supreme Court under 28 U.S.C. § 1257(a) and to bar any proceeding that would functionally amount to a lateral appeal of a state court decision to a United States district court. <u>Id.</u> For this reason, the <u>Rooker-Feldman</u> doctrine prohibits a district court even from consideration of issues "actually presented to and decided by a state court." <u>Plyler v. Moore</u>, 129 F.3d 728, 731 (4th Cir. 1997).

A distillation of plaintiff's Complaint reveals that the plaintiff is in fact seeking federal court review of the state court's issuance of the "Order in Aid." Plaintiff contends that such Order is void and also unconstitutional, questions which are barred under the <u>Rooker-Feldman</u> doctrine. The <u>Rooker-Feldman</u> doctrine prevents not only federal consideration of issues that were actually decided by a state court, <u>Kamilewicz v. Bank of Boston Corp.</u>, 92 F.3d 506, 509 (7th Cir.1996), it also prevents lower federal courts from considering constitutional claims that are "inextricably intertwined" with state court judgments, as when success on the constitutional claim depends upon a determination that the state court wrongfully decided the issues before it. <u>Nationscredit Home Equity Servs. Corp. v. City of Chi.</u>, 135 F.Supp.2d 905, 909 (N.D. Ill. 2001). If the injury which the plaintiff alleges in the federal action resulted from the state court judgment itself, then

<u>Rooker-Feldman</u> controls and a federal district court lacks jurisdiction over the claim. <u>4901</u> <u>Corp. v. Cicero</u>, 220 F.3d 522, 527 (7th Cir.2000). <u>See</u> <u>Blair v. Supportkids, Inc.</u>, 222 F.Supp.2d 1038, 1046 (N.D.Ill. 2002).

**VII.    Motions to Dismiss Specific Causes of Action**

**A.    Alternative Motions to Dismiss the First and Second Federal Causes of Action: Alleged Violation of 14th Amendment Rights to Substantive and Procedural Due Process.**

As discussed above, the undersigned firmly believes that this court should abstain from consideration of plaintiff's first and second federal causes of action. In an abundance of caution, however, the undersigned will address the substance of the motions to dismiss these claims.

In his first claim made pursuant to 42, United States Code, Section1983, plaintiff contends that all defendants violated his substantive due process rights under the fourteenth amendment when they instituted post-judgment proceedings under Articles 16 of Chapter 1C of the North Carolina General Statutes, codified as § 1C-1601, *et seq.,* and Article 28 and 31 of Chapter 1 of the North Carolina General Statutes, codified as § 1-302, *et seq.*, and 1-352, *et seq*. In his second claim, which is also made under Section 1983, plaintiff contends that all defendants violated his procedural due process rights under the fourteenth amendment when they instituted post-judgment proceedings Chapters 1C-1601, *et seq.,* 1-302, *et seq.*, and 1-352, *et seq.*, of the North Carolina General Statutes.

**1.    Substantive Due Process Violation**

In general, "[s]ubstantive due process protection is reserved for extreme government conduct that cannot be remedied by pre- or post-deprivation proceedings." <u>Nelson v.</u> <u>Diversified Collection Services, Inc.</u>, 961 F.Supp. 863, 871 (D. Md. 1997) (*citing* <u>Rucker v.</u> <u>Harford County Maryland</u>, 946 F.2d 278, 281 (4th Cir. 1991)). A substantive due process

violation generally requires allegations of conduct that shocks the conscience. Rochin v. California, 342 U.S. 165, 173 (1952); Weller v. Department of Social Servs., 901 F.2d 387 (4th Cir. 1990); Hall v. Tawney, 621 F.2d 607, 613 (4th Cir. 1980). Such abuse of governmental power must be so egregious or outrageous that no state post-deprivation remedy can adequately preserve the constitutional guarantees of freedom from such conduct, and that such governmental abuse constitutes a substantive due process violation regardless of the procedures afforded. Temkin v. Frederick County Comm'rs, 945 F.2d 716 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3578 (U.S. 1992). In any event, simple negligence cannot form the basis of a deprivation of either substantive or procedural due process. Daniels v. Williams, 474 U.S. 327 (1986).

The undersigned has closely reviewed the allegations of the Complaint and finds, as a matter of law, that no "extreme government misconduct" has been alleged. Further, the undersigned finds that the result of the alleged wrong -- seizure of funds in a bank account-- is most certainly the type of harm that can "remedied by pre- or post-deprivation proceedings." Nelson, supra. In this case, had plaintiff simply filled out the notice to claim exemptions form that he had been served with on nine-separate occasions and requested a hearing, he could have informed the state court of the source of the funds and his belief that they could not be used to satisfy a judgment.

Post deprivation, North Carolina law provides for a "motion in the cause," N.C.Gen.Stat. 1C-1603(g), showing "a change in circumstances," and failing such, plaintiff could have filed a motion under Rule 60(b), North Carolina Rules of Civil Procedure, seeking to set aside the earlier Orders of the district court. In fact, plaintiff could do so to this day as discussed in the section of this memorandum discussing abstention. Further, the act of state judicial officials in processing Orders and Writs pursuant to a statutory scheme

which has been in place for decades does not "shock the conscience." Indeed, the adequacy as well as the availability of pre- and post-deprivation remedies is highlighted by the warnings and rights recited to debtors by way of the judicially approved notice. It not only informs them of their rights pre-deprivation and provides the necessary forms, i.e., a debtor need not even leave the comfort of his home to even retrieve the forms, it further advises them that "[y]ou may wish to consider hiring an attorney to help you with this proceeding to make certain that you receive all the protections to which you are entitled." See Forms AOC-CV-406 & 407, N.C.A.O.C.

The undersigned will, therefore, recommend that plaintiff's substantive due process claim be dismissed with prejudice inasmuch as neither extreme governmental conduct nor inadequate remedies have been sufficiently pleaded.

### 2.    Procedural Due Process Violation

As to procedural due process, "[p]rocedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978). Put another way,

> [i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest . . . is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest without due process of law.

Zinermon v. Burch, 494 U.S. 113, 125 (1990) (emphasis deleted). To challenge the process provided, "the claimant must either avail himself of the remedies guaranteed by state law or prove that the available remedies are inadequate . . . . When adequate remedies are provided and followed, no . . . deprivation of property without due process can result." Hudson v. Palmer, 468 U.S. 517, 539 (1984) (O'Connor, J., concurring). Evidently plaintiff did not do so. Instead, he contends that the North Carolina remedies which he failed to employ are inadequate.

The first step in determining what "property interests" are protectable under the fourteenth amendment requires review of North Carolina law. To prevent stacking, North Carolina provides a judgment debtor with the ability to elect between a laundry list of statutory exemptions or the exemption guaranteed by the state's Constitution. The statutory exemptions are:

### § 1C-1601. What property exempt; waiver; exceptions.

(a)    Exempt property. – Each individual, resident of this State, who is a debtor is entitled to retain free of the enforcement of the claims of creditors:

    (1)    The debtor's aggregate interest, not to exceed ten thousand dollars ($10,000) in value, in real property or personal property that the debtor or a dependent of the debtor uses as a residence, in a cooperative that owns property that the debtor or a dependent of the debtor uses as a residence, or in a burial plot for the debtor or a dependent of the debtor.

    (2)    The debtor's aggregate interest in any property, not to exceed three thousand five hundred dollars ($3,500) in value less any amount of the exemption used under subdivision (1).

    (3)    The debtor's interest, not to exceed one thousand five hundred dollars ($1,500) in value, in one motor vehicle.

    (4)    The debtor's aggregate interest, not to exceed three thousand five hundred dollars ($3,500) in value for the debtor plus seven hundred fifty dollars ($750.00) for each dependent of the debtor, not to exceed three thousand dollars ($3,000) total for dependents, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, or musical instruments, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

    (5)    The debtor's aggregate interest, not to exceed seven hundred fifty dollars ($750.00) in value, in any implements, professional books, or tools of the trade of the debtor or the trade of a dependent of the debtor.

    (6)    Life insurance as provided in Article X, Section 5 of the Constitution of North Carolina.

    (7)    Professionally prescribed health aids for the debtor or a dependent of the debtor.

    (8)    Compensation for personal injury or compensation for the death of a person upon whom the debtor was dependent for support, but such compensation is not exempt from claims for funeral, legal, medical, dental, hospital, and health care charges related to the accident or injury giving rise to the compensation.

    (9)    Individual retirement plans as defined in the Internal Revenue Code and any plan treated in the same manner as an individual retirement plan under the

Internal Revenue Code. For purposes of this subdivision, "Internal Revenue Code" means Code as defined in G.S. 105-228.90.

(b)     Definition. – "Value" as used in this Article means fair market value of an individual's interest in property, less valid liens superior to the judgment lien sought to be enforced.

(c)     Waiver. – The exemptions provided in this Article and in Sections 1 and 2 of Article X of the North Carolina Constitution, cannot be waived except by:

    (1)     Transfer of property allocated as exempt (and in that event only as to the specific property transferred), or

    (2)     Written waiver, after judgment, approved by the clerk or district court judge. The clerk or district court judge must find that the waiver is made freely, voluntarily, and with full knowledge of the debtor's rights to exemptions and that he is not required to waive them;

    (3)     Failure to assert the exemption after notice to do so pursuant to G.S. 1C-1603. The clerk or district court judge may relieve such a waiver made by reason of mistake, surprise or excusable neglect, to the extent that the rights of innocent third parties are not affected.

(d)     Recent purchases. – The exemptions provided in subdivisions (2), (3), (4) and (5) of subsection (a) of this section are inapplicable with respect to tangible personal property purchased by the debtor less than 90 days preceding the initiation of judgment collection proceedings or the filing of a petition for bankruptcy.

(e)     Exceptions. – The exemptions provided in this Article are inapplicable to claims:

    (1)     Of the United States or its agencies as provided by federal law;

    (2)     Of the State or its subdivisions for taxes, appearance bonds or fiduciary bonds;

    (3)     Of lien by a laborer for work done and performed for the person claiming the exemption, but only as to the specific property affected;

    (4)     Of lien by a mechanic for work done on the premises, but only as to the specific property affected;

    (5)     For payment of obligations contracted for the purchase of the specific real property affected;

    (6)     Repealed by Session Laws 1981 (Regular Session, 1982), c. 1224, s. 6.

    (7)     For contractual security interests in the specific property affected; provided, that the exemptions shall apply to the debtor's household goods notwithstanding any contract for a nonpossessory, nonpurchase money security interest in any such goods;

    (8)     For statutory liens, on the specific property affected, other than judicial liens;

    (9)     For child support, alimony or distributive award order pursuant to Chapter 50 of the General Statutes;

    (10)    For criminal restitution orders docketed as civil judgments pursuant to G.S. 15A-1340.38.

(f)     Federal Bankruptcy Act. – The exemptions provided in The Bankruptcy Act, 11 U.S.C. § 522(d), are not applicable to residents of this State. The exemptions provided by this Article shall apply for purposes of The Bankruptcy Act, 11 U.S.C. §522(b).

(g)     Effect of exemptions. – Notwithstanding any other provision of law, a creditor shall not obtain possession of a debtor's household goods and furnishings in which the creditor holds a nonpossessory, nonpurchase money security interest until the creditor has fully complied with the procedures required by G.S. 1C-1603. (1981, c. 490, s. 1; 1981 (Reg. Sess., 1982), c.1224, ss. 1-7, 20; 1991, c. 506, s. 1; 1995, c. 250, s. 1; 1998-212, s. 19.4(j); 1999-337, s. 2.)

The North Carolina Constitutional exemptions are:

### § 1C-1602. Alternative exemptions.

The debtor may elect to take the personal property and homestead exemptions provided in Article X of the Constitution of North Carolina instead of the exemptions provided by G.S. 1C-1601. If the debtor elects to take his constitutional exemptions, the exemptions provided in G.S. 1C-1601 shall not apply and in that event the exemptions provided in this Article shall not be construed so as to affect the personal property and homestead exemptions granted by Article X of the Constitution of North Carolina. If the debtor elects to take his constitutional exemptions, the clerk or district court judge must designate the property to be exempt under the procedure set out in G.S. 1C-1603. The debtor is entitled to have one thousand dollars ($1,000) in value in real property owned and occupied by him and five hundred dollars ($500.00) in value in his personal property exempted from sale under execution. If the value of the property in which the debtor claims his constitutional exemption is in excess of his exemptions, the clerk, in an execution, may order the sale of the property with the proceeds of the sale being distributed first to the debtor to satisfy his exemption and the excess to be distributed as ordered. (1981, c. 490, s. 1; 1981 (Reg. Sess., 1982), c. 1224, s. 8.)

Prior to a creditor being able to obtain a writ of execution, the creditor must serve the judgment debtor with a "Notice of Right to Have Exemptions Designated" ("AOC-CV-406"), which is a form created by the North Carolina Administrative Office of the Courts in compliance with Chapter 1C-1603 of the North Carolina General Statutes.  The applicable state forum, AOC-CV-406, provides, as follows:

The judgment creditor (person who has the judgment against you) is now seeking to collect this judgment and has asked me to give you notice of your rights.) Under the Constitution and laws of North Carolina, you have the right

> to exempt from the collection of the judgment certain of your property (in other words, to keep it from being taken from you.) If you wish to keep your exempt property, you MUST fill out the attached Motion To Claim Exempt Property and mail or take it to the Clerk of Superior Court at the address listed below. You MUST also mail or take a copy to the judgment creditor at the address listed below. The law gives you another option of requesting, in writing, a hearing before the Clerk to claim your exemptions. If you make a written request for a hearing, you will be notified of the time and place of the hearing when you may claim your exemptions.
>
> It is important that you respond to this Notice no later than twenty (20) days after it was served on you because you will lose valuable statutory rights if you do nothing. If you do not respond, you will give up your right to statutory exemptions and the judgment creditor may be able to take any or all of your property to satisfy the judgment. You have certain constitutional rights you may claim if you give up your statutory rights. You may wish to consider hiring an attorney to help you with this proceeding to make certain that you receive all the protections to which you are entitled.

See Plaintiff's Ex. 10 (emphasis added). When AOC-CV-406 is compared to the notice suggested and contained in Chapter 1C-1603, it is readily apparent that the North Carolina Administrative Office of the Courts determined that it would be appropriate to provide even more extensive notice than required by the statutes.

Not only does AOC-CV-406 give debtors actual notice of all exemptions available under North Carolina law, it also advises the debtor of his right to request a hearing and the method for requesting a hearing, which is simply the filing of a "writing" with the Clerk. Such notice goes even further than Reigh in that the notice advises the debtor that he or she may wish to seek the advice of an attorney "to make certain that you receive all the protections to which you are entitled." Finally, such notice requires attachment of AOC-CV-407, which is a form "Motion to Claim Exempt Property." Such three-page form takes the debtor step-by-step through the possible statutory exemptions, and further advises the debtor that if "you need assistance, you should talk with an attorney." Complaint, Exs. 11 & 12. Indeed, AOC-CV-407 goes so far as to parenthetically explain legal terms:

> I wish to claim as exempt (keep from being taken) my interest in the following real or personal property that I use as a residence.

Complaint, Exs. 11 & 12.

Not only do the judicially created forms provide ample notice of rights, hearings, and procedures, the statutorily mandated method for service of such documents, which must be accomplished *before* a Writ of Execution can issue, would indicate to all but the patently foolish that a serious proceeding was about to commence. The statute requires, in pertinent part:

> The judgment creditor must cause the notice to be served on the debtor as provided in G.S. 1A-1, Rule 4(j)(1). If the judgment debtor cannot be served as provided above, the judgment creditor may serve him by mailing a copy of the notice to the judgment debtor at his last known address. Proof of service by certified or registered mail or personal service is as provided in G.S. 1A-1, Rule 4. The judgment creditor may prove service by mailing to last known address by filing a certificate that the notice was served indicating the circumstances warranting the use of such service and the date and address of service.

N.C. Gen. Stat. § 1C-1603(a)(4). In short, the method of service is nearly identical to that used for notifying an individual that civil litigation has been commenced. The undersigned simply cannot fathom any method that would be more effective in notifying a judgment debtor that a proceeding has been commenced against him and that it is a serious matter. Likewise, it would be beyond reason to find that a method sufficient for haling a person into court on a civil action would be insufficient for haling him into court for purposes of collecting upon the judgment rendered in such civil proceeding. The law also provides an additional method for the debtor to modify his exemptions at a later time, through a motion in the cause. See N.C.Gen.Stat. § 1C-1603(g).

Apparently, plaintiff points to lack of the words "federal exemptions" in the notice as

being a constitutional deficiency.  Plaintiff contends that Reigh sets a "bright line" in that these words must be included in the notice to comply with the fourteenth amendment.  To understand the first appellate decision in Reigh, the undersigned has reviewed the district court's underlying published decision, Reigh v. Schleigh, 595 F.Supp. 1535 (D.Md. 1984).  From what the court can discern, at the time such action was filed, Maryland's law or judicial procedural rules simply did not require the creditor to provide a debtor with notice of any exemptions.  Id., at f.n. 5, and 1543.  As the case progressed, it appears that the defendants submitted to the district court changes and proposed changes to Maryland district and circuit rules governing post-judgment execution, which were drafted by the Maryland Rules Committee.  Hearings were then held, and more changes were made to the rules.  Id., at 1546.  In the end, and prior to the entry of such decision, Maryland Rule 3-645 was enacted, which required a writ of garnishment to "notify the judgment debtor and garnishee that federal and state exemptions may be available."  Id., at f.n. 7.  The district court found that the "new Maryland District Rules provide that . . . . [t]he writ shall contain notice to the judgment debtor that federal and state exemptions may be available . . . ."  Id., at 1548.

By enacting Rule 3-645, the State of Maryland created a property interest in "federal exemptions."  This language was picked up by the district court in Reigh, and later repeated by the Court of Appeals in Reigh v. Sleigh, supra, which held in relevant part that "a notice which advises the judgment debtor that there are state and federal exemptions that may be available to him, coupled with notice of the right to contest the attachment, meets the requirements of due process."  Id., at 1197 (emphasis added).  Indeed, the appellate court's reasoning is very accurate in that it reflects exemptions - - property interests - - patently recognized by Maryland law, and which require the protections of due process.

Plaintiff asserts that North Carolina's notice should take its lead from Maryland and

also inform debtors of "federal exemptions." Plaintiff takes issue with the North Carolina use of the phrase "[u]nder the Constitution and laws of North Carolina" instead of "state and federal exemptions" to describe the available exemptions in North Carolina and approved in Reigh. In Reigh, where state authorities apparently amended the Maryland exemption scheme during and in response to the Reigh litigation, Maryland created a statutory recognition of federal exemptions. Clearly, North Carolina does not recognize all "federal exemptions," which is clearly stated in Chapter 1C-1601(f), which provides that the federal bankruptcy exemptions are inapplicable to residents of North Carolina. In Berry v. Firs-Citizens Bank & Trust Co., 33 Bankr. 351 (Bankr. W.D.N.C. 1983), Honorable Marvin J. Wooten held, as follows:

> Thus the exemptions available to a North Carolina debtor in bankruptcy are those prescribed by North Carolina General Statutes Section 1C-1601, Section 1C-1602 and the non-Section 522(d) exemptions afforded by federal law.

Id., at 352. Thus, North Carolina's recognition of federal exemptions is not found in the state's statutory scheme, but at common law through cases which recognize that certain "federal benefits" are exemption from execution (see Barrett v. Barrett, 122 N.C.App. 185, 187 (1996)(recognizing that certain federal benefits may be exempt) or that there are extant "federal exemptions" recognized by North Carolina at common law. See Bryant v. Carrier, 214 N.C. 174 (1938)(recognizing the limits of the exemption applicable to federal World War veteran's pensions); Mixon v. Mixon, 203 N.C. 566 (1932)(federal exemptions extended to from claims of creditors against the estate of a veteran); Berry, supra.

Thus, the statement contained in the standard "Notice of Right to have Exemptions Designated," to wit, that "[u]nder the Constitution and laws of North Carolina, you have the right to exempt . . . certain of your property . . . " is an accurate reflection of the law in North

Carolina, inasmuch as the exemptions are in fact found in the "law*s*" of North Carolina: the North Carolina General Statutes and the common law as expressed by various courts.

To read <u>Reigh</u> as requiring all states to use the magic words of "state and federal exemptions" is a very broad reading of the decision of the appellate court. Such a reading would impose a federal mandate on states to not only rewrite their exemptions notice, but to legislate and possibly create property interests (which is what an exemptions is), which the states have not deemed appropriate to recognize or create. To do so would clearly violate the tenth amendment to the United States Constitution:

> The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people.

U.S. Const., Amend. X.

While the Due Process Clause of the fourteenth amendment to the United States Constitution protects property interests, such property interests are not created by the Constitution. Instead, property interests are created by state law:

> [p]roperty interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law - rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

<u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577 (1972). The Court has also made clear that property interests are "creatures of state law." <u>Perry v. Sindermann</u>, 408 U.S. 593, 599-603 (1972). Indeed, even in the context of judgment collection, courts have recognized that "by creating exemptions from execution, . . . [the state] granted judgment debtors a property interest in retaining their exempt property." <u>Aacen v. San Juan County Sheriff's Dept.</u>, 944 F.2d 691 (10th Cir. 1991).

Further, the undersigned finds that North Carolina's statutory scheme and the forms promulgated by the state's judiciary far exceed the "bright line" plaintiff finds in <u>Reigh</u>, in that the notice not only informs plaintiff of the existence of his exemptions, his right to be heard, and informs him of the procedures to assert both, such notice carefully explains that such rights are important and that he should consult an attorney. Further, the notice must be viewed in its entirety, which includes the three-page "Motion to Claim Exempt Property" that must be served with the notice.

Finally, not only must service of such notice comport with the requirements of Rule 4(j) of the North Carolina Rules of Civil Procedure, the Writ of Execution cannot issue until such time as the judgement debtor is notified of his rights and has an opportunity to respond or request a hearing. In attempting to impose <u>Reigh</u>, a case that dealt with a very different statutory scheme in Maryland, on the well-developed scheme in North Carolina, plaintiff is simply arguing that one-size-fits-all. The judgment enforcement procedures addressed in <u>Reigh</u> involved the situation where a creditor first locates the property to be seized, then uses state action to cause a writ of attachment to issue, and only then provides notice to the debtor of the seizure of his property. As such, the procedure in <u>Reigh</u> was a much disfavored post-deprivation scheme. On the complete opposite end of the spectrum from Maryland is North Carolina, which provides for pre-deprivation notice, a mandatory form notice with extensive instructions and self-help forms, advice concerning the importance of counsel, service of such notice in the same manner as required for service of an original complaint, and an opportunity to be heard.

Debtors in North Carolina, therefore, are not only provided with sufficient notice and an opportunity to be heard, they are provided with an opportunity to be heard *before* their property is taken by state action, which is preferable to even the post-<u>Reigh</u> scheme in

Maryland.  As the United States Supreme Court has held:

> An essential principle of due process is that a deprivation of life, liberty or property 'be <u>preceded</u> by notice and opportunity for hearing appropriate to the nature of the case.'

<u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 542 (1984) (quoting <u>Mullane v. Central Hanover Bank & Trust Co.</u>, 399 U.S. 306, 313 (1950)).  "[A] pre-deprivation hearing is certainly the preferred manner of satisfying due process." <u>UDC Chairs Chapter, American Ass'n of University v. Board of Trustees of University of District of Columbia</u>, 56 F.3d 1469 (D.C. Cir. 1995). [2]

According to plaintiff,  <u>Reigh</u> stands for the "bright line" proposition that to be adequate under due procees, the notice must state that a debtor has "state and federal exemptions."  While there is no doubt but that <u>Reigh</u> *approved* a Maryland notice that used the phrase "state and federal exemptions," it is a stretch to argue that <u>Reigh</u> *mandates* such language in every state's notice of right to designate exemptions.  Instead, the constitutional inquiry as to "adequacy" would appear to be that the notice as well as the timing of the hearing need only be "appropriate to the nature of the case." <u>Cleveland Bd. of Educ.</u>, <u>supra</u>.

North Carolina's post-judgment enforcement laws and judicial forms are adequate in that they fully comply with the instructions of <u>Cleveland Bd. of Educ.</u>, and go well beyond the scheme approved in  <u>Reigh</u>.  Further, North Carolina's notice goes so far as to advise the

---

[2]     While plaintiff is herein relying on the alleged facial inadequacy of the statutory scheme, rather than his use of such scheme, he admits that his adult girl friend received the notice in this case, but he disingenuously states that he had no knowledge of such notice or his pre-deprivation right to set aside exemptions.  Such statements do nothing to forward his argument as to the purported inadequacy of the North Carolina procedures, inasmuch as Rule 4 service by certified mail imputes knowledge of the proceedings to the respondent, even where some other adult in his household signs for the mail.

civil judgment debtor of the importance of seeking counsel in protecting exemption rights, which is advice more akin to that mandated where a person's liberty is at stake. See Miranda v. Arizona, 384 U.S. 436 (1966).

To pass constitutional muster, North Carolina's remedies must be adequate, not homogeneous. Indeed, the federalization and micro-management of state sovereign acts -- down to the language of forms - - championed by plaintiff in this suit would fly in the face of the decision in Judice, supra, which recognized "the fact that the entire country is made up of a union of separate state governments, and a continuance of the belief that the National Government will fair best if the States and their institutions are left free to perform their separate functions in their separate ways." Id., at 1217 (citations omitted). Again, judicial *approval* of language used by Maryland in Reigh is not a *mandate* for the other states comprising the Fourth Circuit to follow suit. Therefore, there is no bright line and "Reigh" provides no cause of action for plaintiff.

Further, to provide an adequate remedy under procedural due process there is no requirement that North Carolina write its notice to be understood by the least common denominator of judgment debtor. While expressed in another context, this theory of "dumbing down" has been soundly rejected:

> These rulings may have been correct under the standard applied, but that test could not properly purport to protect the least sophisticated consumer, for the least sophisticated consumer is a dull bulb indeed. If the law truly seeks to protect the least sophisticated consumer, courts would have to evaluate the good faith of any plaintiff or witness claiming to have been misled, no matter how unreasonable, no matter how dull, no matter how stupid the failure to understand. . . . Even if never before that time had anyone been so ignorant as to be misled by the letter in question, we would have a new leader in the never-ending race to the bottom, a new least sophisticated consumer, and a new and unforeseeable burden on the legitimate and important, if unpopular, business of debt collection.

<u>Youngblood v. GC Services Ltd. Partnership</u>, 186 F.Supp.2d 695, 698 (W.D.Tex. 2002).

While it is apparent that plaintiff is attempting to cut a better deal for North Carolina judgment debtors, many of whom are of modest means, plaintiff may not fully grasp what it is he is asking this court to do. If North Carolina were to be forced to follow <u>Reigh</u> and duplicate the Maryland scheme, North Carolina judgment debtors would no longer enjoy pre-deprivation remedies and protections, but instead only be allowed post-deprivation remedies like those used in Maryland. As discussed at length in this memorandum, North Carolina laws not only provide pre-deprivation notice and remedies, they provide multiple avenues for post-deprivation relief. Further, the Constitution of the State of North Carolina provides even greater due process than that afforded under the fourteenth amendment to the United States Constitution.

Finding that plaintiff has failed to state a claim for violation of procedural due process and that North Carolina law fully complies with <u>Reigh</u> and, more particularly, the requirements of procedural due process as expressed in <u>Cleveland Bd. of Educ.</u>, <u>supra</u>, the undersigned will respectfully recommend that plaintiff's procedural due process claim also be dismissed with prejudice in accordance with Rule 12(b)(6).

### B.    Fair Debt Collection Practices Act Claim

As a third federal cause of action, plaintiff has asserted a claim under the Fair Debt Collection Practices Act against the Sessoms defendants for alleged unfair debt collection practices. For the reasons discussed below, the undersigned finds that plaintiff has properly stated a FDCPA claim and that such claim should move forward to discovery. In their Motion for Judgment on the Pleadings, the Sessoms defendants do not argue for judgment or dismissal of this claim. No other defendant is party to this claim. In sum, plaintiff

contends that the acts of the Sessoms defendants violated the provisions of 15, United States Code, Sections 1692d through 1692f, and he has alleged that the acts of which he complains " constitute willful unfair and deceptive practices," Complaint, at ¶ 112, plaintiff has stated a claim for relief under the FDCPA.

### C.  Supplemental Claim for Declaratory Relief

Plaintiff next asserts a claim for declaratory relief under the North Carolina Declaratory Relief Act.  This claim is interdependent on the viability of plaintiff's constitutional challenge to the North Carolina post-judgment debt collection statutes insofar as he seeks to have the North Carolina statutes and AOC forms declared unconstitutional. As discussed above, plaintiff fails to state a cause of action of constitutional dimension and, therefore, does not have a viable claim for declaratory relief.

Plaintiff also asks this federal court to declare the Order in Aid of Execution "declared void as a matter of law."  Complaint, at ¶ 115.  Plaintiff makes this allegation in eleven different paragraphs.  Complaint, at ¶ 71(C), 72(C), 73(F), 74(e), 75(D), 76(G), 77(E), 78(J), 79(C), 80(B), & 81(G).  For the reasons discussed *supra,* not the least of which is comity, the undersigned will not recommend that a lower federal  court declare any state court Order void.  Further, inasmuch as such Order was entered in a state civil matter that is still ongoing (insofar as the judgment remains unsatisfied), plaintiff is at liberty to seek that relief from the state court through a motion in the cause pursuant to Rule 60(b) of the North Carolina Rules of Civil Procedure.  Grounds for relief from a Judgment or Order are stated in the rule:

> **(b)    Mistakes; inadvertence; excusable neglect; newly discovered evidence; fraud, etc.**--On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
>
> (1)     Mistake, inadvertence, surprise, or excusable neglect;
>
> (2)     Newly discovered evidence which by due diligence could not

have been discovered in time to move for a new trial under Rule 59(b);

(3)    Fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party;

(4)    The judgment is void;

(5)    The judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or

(6)    Any other reason justifying relief from the operation of the judgment.

The motion shall be made within a reasonable time, and for reasons (1), (2) and (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this section does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to set aside a judgment for fraud upon the court. The procedure for obtaining any relief from a judgment, order, or proceeding shall be by motion as prescribed in these rules or by an independent action.

N.C.R.Civ.P. 60(b). Grounds one, two, and three may be made within one year. Allegations that the judgment is void may be made within a reasonable time. Thus, adequate relief is available to plaintiff in state court should the plaintiff seek such relief and should it be determined by a state tribunal that such relief is warranted. Such possible relief would include declaratory and injunctive relief, and an opportunity to raise constitutional arguments. Indeed, the United States Supreme Court has held that the state forum is not only competent to hear the federal constitutional challenge, it is the preferable forum when a party challenges the constitutionality of a state law. "Minimal respect for the state processes, of course, precludes any presumption that the state courts will not safeguard federal constitutional rights." Middlesex, supra, at 431. The Supreme Court has held, as follows:

We have often emphasized that, in our federal system, it is preferable that constitutional attacks on state statutes be raised defensively in state-court proceedings rather than in proceedings initiated in federal court.

Zauderer v. Office of Disciplinary Counsel of Supreme Court of Ohio, 471 U.S. 626, 638 n.8 (1985)(citation omitted).  The undersigned will recommend that this claim be dismissed with prejudice in its entirety.

### D.    Injunctive Relief.

Plaintiff next asserts a claim for injunctive relief under the North Carolina law.  In this claim, plaintiff seeks to enjoin the Sessoms defendants, Chase, Judge Cilley, Clerk of Superior Court Melton, and Sheriff Good from further utilizing the North Carolina post-judgment debt collection statutes or the AOC forms.  As discussed above, plaintiff fails to state a cause of action of constitutional dimension and, therefore, does not have a viable claim for injunctive relief.  The undersigned will recommend that this claim be dismissed with prejudice.

### E.    Conversion

Plaintiff also seeks damages against the Sessoms defendants, Chase, Sheriff Good and Travelers for conversion of his bank account.  "Conversion is defined as 'an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" Gallimore v. Sink, 27 N.C.App. 65, 67 (1975) (citations omitted).

Plaintiff fails to state a claim for conversion against Sheriff Good and Travelers inasmuch as the plaintiff's own allegations reveal that the sheriff's purported "exercise of ownership" was *authorized* by a court Order and Writ lawful on its face.  As to the Sessoms defendants and Chase, those defendants appear to correctly argue that a person does not "own" his bank deposits, but instead has a contractual right to receive those funds in the future.  Rosenstein v. Mechanics & Farmers Bank, 304 N.C. 541, 543 (1981).  Due to the

lack of "ownership" of the funds seized, plaintiff cannot state a cause of action for conversion as to these defendants. Based on the allegations of the Complaint, plaintiff fails to state a cause of action for conversion against the defendants, and the undersigned will recommend that such claim be dismissed with prejudice in its entirety.

**F.     Fraud**.

Plaintiff next alleges the common law tort of fraud against the Sessoms defendants and Chase. The Sessoms defendant have not moved for dismissal as to this issue, so the claim should go forward as to such defendant.

As to Chase, such defendant has moved to dismiss this claim contending that plaintiff has failed to sufficiently allege facts that would support each and every element of the tort. The Federal Rules of Civil Procedure apply in all civil actions whether they are cases at law or in equity. Fed. R. Civ. P. 1. Plaintiff's complaint, even if it sounds in equity, is subject to the requirement that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that all averments of fraud set forth the circumstances constituting the fraud "with particularity." Fed. R. Civ. P. 8(a) and 9(b). The Complaint not only fails to plead fraud with particularity as required by Federal Rule 9(b), but it also fails to plead all of the substantive elements required under North Carolina law. See Odom v. Little Rock & I-85 Corp., 299 N.C. 86, 91-92 (1980); See Myers & Chapman v. Thomas G. Evans, 323 N.C. 559 (1988). The elements of fraud include the following:

> (a) that the defendant made a representation relating to some material past or existing fact; (b) that the representation was false; (c) that when he made it defendant knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (d) that the defendant made the false representation with the intention that it should be acted on by the plaintiff; (e) that the plaintiff reasonably relied upon the representation and acted upon it; and (f) that the plaintiff suffered injury.

Odom, supra, at 91-92. Specifically, there are no allegations that Chase either made the false representation with the intent that it should be *acted upon by the plaintiff*, or that *plaintiff reasonably relied upon the false representation and acted upon it.* Instead, there are no allegations that Chase did anything with an intent to deceive plaintiff, that plaintiff was deceived by anything Chase did, or that plaintiff reasonably relied on any act of Chase.

Plaintiff has also argued that the fraud claim against Chase is viable under a theory of agency, inasmuch as the Sessoms defendants were the agents of Chase and any alleged fraudulent acts of such defendants should be impute to the principal, Chase.

> 'A principal who authorizes a servant or other agent to institute or conduct such legal proceedings as in his judgment are lawful and desirable for the protection of the principal's interests is subject to liability to a person against whom proceedings reasonably adapted to accomplish the principal's purposes are tortiously brought by the agent.' Restatement (Second) of Agency § 253.

Hewes v. Wolfe, 74 N.C.App. 610, 619 (1985)(citation omitted; quoting with approval Restatement (Second) of Agency § 253). In Wolfe, there were not only allegations that the client knew exactly what abuses of process the lawyer was employing, there was overwhelming proof that the lawyer committed such abuses with the client's blessings. Turning to the allegations of this Complaint, plaintiff's claim of fraud is bare bones and consists of only three substantive paragraphs. See Complaint, at ¶¶ 122-24. The undersigned has, therefore, reviewed the 121 paragraphs that precede and are incorporated into such claim to determine whether plaintiff has at least alleged in some manner that Chase knew and approved of the Sessoms defendants alleged abuse of process or fraud. Paragraphs 62 through 92 of the Complaint are relevant to this inquiry. Throughout those paragraphs, which deal with the presentation of the allegedly unlawful "Order in Aid," plaintiff consistently alleges that "Mr. Sessoms knew" ¶ 78, "Mr. Sessoms caused" ¶ 87, "Mr. Sessoms

prepared and delivered" ¶ 68, and that "Mr. Sessoms sent" ¶ 62. The only allegation that

involves Chase in such process is contained in paragraph 92, which provides:

> The actions of Chase Manhattan Bank, by and through Mr. Sessoms . . .
> complained of herein were willful, wanton, unfair, deceptive, and in and
> affecting commerce.

Complaint, at ¶ 92. There are simply no allegations that Mr. Sessoms alleged acts were

authorized or even known of by Chase. Instead, plaintiff makes clear that the alleged fraud

by Mr. Sessoms was of his own creation and simply business as usual for Mr. Sessoms:

> On information and belief, Mr. Sessoms has employed the same or
> substantially the same process as alleged in paragraph 34 herein to obtain entry
> of orders similar to the 7/14/03 ORDER IN AID pursuant to N.C. Gen. Stat.
> § 1-362 with the intent of seeking payment for such judgments on behalf of
> judgment creditors in other civil actions in the courts of North Carolina.

Complaint, at ¶ 69. Indeed, the North Carolina courts have recognized that, in the context

of debt collection, "acts engaged by . . . counsel, even if cloaked in terms of a principal-agent

relationship, fall within the learned profession exemption and thus outside the purview of the

NCDCA." Davis Law Community Ass'n. v. Feldmann, 138 N.C.App. 292, 297 (2000).

Even if plaintiff had alleged knowledge and consent, or if Wolfe can be read to impute

liability to the client simply through agency, Chase's liability as to the claim against the

Sessoms defendants would be dependent on plaintiff stating a valid claim for fraud against

the Sessoms defendants. There simply are no allegations that the Sessoms defendants made

the false representation with the intent that it should be *acted upon by the plaintiff*, or that

*plaintiff reasonably relied upon the false representation and acted upon it.* Odom, supra.

Instead, it appears that plaintiff has alleged that the Sessoms defendants engaged in faulty

debt collection practices, but such allegations do not rise to the level of fraud as alleged.

The undersigned will, therefore, recommend that the fraud claim asserted against

Chase be dismissed with prejudice. Inasmuch as plaintiff does not make allegations that would support a finding in his favor as to each element of fraud as to the Sessoms defendants, the undersigned will recommend that the fraud claim also be dismissed as to the Sessoms defendants.

### G. Interference with Contract.

Plaintiff asserts a claim against the Sessoms defendants, Chase, Sheriff Good and Travelers for interference with contract. For the same reasons discussed above as to conversion, this claim must be dismissed as to the Sheriff and Travelers. Sessoms has not argued for dismissal of this claim, so the claim will remain as to such defendant. Chase has moved to dismiss, arguing that a claim for interference with contract must be dismissed where the plaintiff's own pleading shows such interference to be justified. Peoples Sec. Life Ins. Co. v. Hooks, 322 N.C. 216, 221 (1988), reh'g denied, 322 N.C. 486 (1988).

> A motion under Rule 12(b)(6) should be granted when the complaint reveals that the interference was justified or privileged. *See, e.g., Smith v. Ford Motor Co.*, 289 N.C. 71, 221 S.E.2d 282 (1976); *Childress v. Abeles*, 240 N.C. 667, 84 S.E.2d 176 (1954). In Smith we held that "[t]he privilege [to interfere] is conditional or qualified; that is, it is lost if exercised for a wrong purpose. In general, a wrong purpose exists where the act is done other than as a reasonable and bona fide attempt to protect the interest of the defendant which is involved." *Smith v. Ford Motor Co.*, 289 N.C. at 91, 221 S.E.2d at 294 (quoting Carpenter, *Interference With Contract Relations*, 41 Harv.L.Rev. 728, 746 (1928)).

In this case, plaintiff's own pleading show that Chase was at all times engaged in an attempt to collect a debt, and that plaintiff was a judgment debtor to Chase. Without doubt, collection of debt is a legitimate business purpose, Youngblood, supra, and Chase is entitled to dismissal of such claim as a matter of North Carolina law. Such claim would survive only as to the Sessoms defendants

## H. Invasion of Privacy

Plaintiff next alleges a claim for invasion of privacy against the Sessoms defendants, Chase, Sheriff Good, and Travelers. Besides referring to and incorporating the previous 128 paragraphs, all that plaintiff states in substance is that based on such 128 paragraphs "Defendants intentionally invaded the privacy of Mr. Fowler . . . ." This allegation does not satisfy the essentials of notice pleading, and plaintiff provides no allegations as to the nature of the privacy interest invaded.

Reviewing such pleading in a light most favorable to plaintiff, it is possible that he is attempting to assert a cause of action for invasion of privacy through "intrusion." The North Carolina courts provide guidance as to such a claim:

> Generally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion. We have held that " 'intrusion' as an invasion of privacy is [a tort that] ... does not depend upon any publicity given a plaintiff or his affairs but generally consists of an intentional physical or sensory interference with, or prying into, a person's solitude or seclusion or his private affairs." Specific examples of intrusion include "physically invading a person's home or other private place, eavesdropping by wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another." The conduct required to support this claim must be so egregious as to be "highly offensive to a reasonable person."

Broughton v. McClatchy Newspapers, Inc., 161 N.C.App. 20, 29 (2003). Even if what plaintiff has alleged did occur, it simply is not "so egregious" as to be highly offensive to a reasonable person inasmuch as the only "prying into a bank account," which would be review of non-public information, was allegedly done by a deputy sheriff pursuant to a court Order and Writ, making such activity "authorized." The undersigned will, therefore, recommend that plaintiff's invasion of privacy claim be dismissed with prejudice.

### I. Obstruction of Justice

Plaintiff next alleges a claim for obstruction of justice against the Sessoms defendants, Chase, Sheriff Good, and Travelers. To successfully state a claim for obstruction of justice, plaintiff must allege that the named defendant performed "any act which prevents, obstructs, impedes or hinders public or legal justice." <u>Broughton v. McClatchy Newspapers, inc.</u>, 161 N.C.App. 20, 30 (2003)(internal citations omitted). Plaintiff's only allegation that nears such requirement is his contention that the Sessoms defendants knowingly submitted the Order in Aid of Execution without following proper procedures. While the Sessoms defendants have not moved to dismiss this claim, the undersigned will recommend that such claim be dismissed in its entirety inasmuch as the allegations of the Complaint, even if proven at trial, would be insufficient for a finder of fact to determine that anyone has obstructed justice.

### J. Abuse of Process

Plaintiff next contends that the Sessoms defendants and Chase "engaged in an abuse of process causing damage to Mr. Fowler . . . ." Complaint, at ¶ 137. The tort of abuse of process has but two elements:

(1) misuse of legal process for an ulterior purpose; and
(2) affirmatively misusing that process after issuance to accomplish a purpose not warranted or commanded by such process.

<u>Stanback v. Stanback</u>, 297 N.C. 181, 200 (1981). Where a person makes legitimate use of the process, i.e., doing what the process allows, no claim will lie for an abuse of process. <u>Melton v. Rickman</u>, 225 N.C. 700, 704 (1945). In this case, plaintiff has attacked the basis for issuance of the Order in Aid of Execution, and while he does not like what that process rendered, he has failed to allege that defendants used such process to obtain anything other than that which was allowed on the face of such process. Therefore, plaintiff has not alleged

an "abuse" of that process, and the undersigned will recommend dismissal of such claim. The undersigned notes that if every time a lawyer received a Order without fully complying applicable procedures, the courts would be filled with claims of abuse of process. Clearly, the North Carolina tort of abuse of process was intended to penalize those who would, for example, obtain criminal process to collect a civil debt. Ellis v. Wellons, 224 N.C. 269 (1944). Procedural or legal errors in the issuance of Orders are corrected through motions in the cause, pursuant to Rule 60(b), North Carolina Rules of Civil Procedure, or appeals, not new lawsuits seeking the same relief. The undersigned will recommend that such claim be dismissed as to all defendants as a matter of law.

### K. North Carolina Debt Collection Act

Plaintiff's twelfth cause of action is asserted against Chase alone, and asserts a violation of the North Carolina Debt Collection Act ("NCDCA"), N.C.Gen.Stat. § 75-50 *et seq*. Chase has moved to dismiss this claim, arguing that to state a NCDCA claim, plaintiff must also satisfy the requirements of the Unfair and Deceptive Trade Practices Act ("UDTPA"). This court agrees.

In the context of liability of attorney debt collectors, the state NCDCA and the federal FDCPA differ significantly. Under the FDCPA, "an attorney performing exclusively legal tasks is not, on that basis alone, precluded from being considered a 'debt collector' under the FDCPA." Scott v. Jones, [CITE] (4th Cir. 1992). No violation of the NCDCA can be asserted unless plaintiff can satisfy the requirements of the UDTPA. Reid v. Ayers, 138 N.C.App. 261 (2000). While the UDTPA applies to acts in "commerce" with debt collection certainly being an act in and effecting commerce, North Carolina specifically exempts "professional services rendered by a member of a learned profession." N.C.Gen.Stat. § 75-

1.1(b).  North Carolina has clearly held that the practice of law is a "learned profession," and that "attorneys engaged in debt collection on behalf of their clients are exempt from the North Carolina Debt Collection Act." Davis Lake Community Ass'n, Inc. v. Feldmann, 138 N.C.App. 292, 294 (2000).

In this case, all that plaintiff has alleged is that Chase violated the NCDCA "by and through" acts of its attorneys.  The North Carolina Court of Appeals is clear that such conduct does not suffice:

> We again emphasize that defendants only have a valid claim against plaintiff, not its counsel. Thus, in proceeding with their claim, defendants must focus on those alleged unfair debt collection practices employed exclusively by plaintiff. Any acts engaged in by plaintiff's counsel, even if cloaked in terms of a principal-agent relationship, fall within the learned profession exemption and thus outside the purview of the NCDCA.

Id., at 297.  The undersigned will, therefore, recommend dismissal of this claim as a matter of law.

### L.      Claim Against Sheriff Good's Surety, Travelers

In his thirteenth claim, plaintiff has asserted a claim against Travelers as Sheriff Good's surety.  Plaintiff contends that Traveler's is obligated to pay him compensatory damages for injury he sustained due to the alleged "neglect, misconduct, or behavior" of Sheriff Good and his deputy.

Plaintiff's action is alleged pursuant to Chapter 58-76-5 of the North Carolina General Statutes, and plaintiff seeks to recover damages and costs from Travelers on the surety bond issued to Sheriff Good.  In order to recover on the bond, plaintiff must first allege actionable misconduct on the part of  Sheriff Good or his deputies.  The plaintiff has not alleged misconduct.  What plaintiff has alleged is a Sheriff and his deputies doing their sworn duty in serving execution, which they are required to do by law, and nothing more.  Since he has

failed to do so as discussed above, the undersigned will recommend that this cause of action also be dismissed.

### M.    Breach of Contract

Plaintiff next alleges a breach of contract against Southtrust Bank.  Plaintiff has amicably resolved this claim with Southtrust, and filed a Rule 41 dismissal signed by all counsel of record . In <u>Gahagan v. North Carolina Hwy. Patrol</u>, 1:00cv52 (W.D.N.C. Oct. 25, 2000),[3] the district court held, as follows:

> Rule 41 . . . speaks only to the dismissal of "actions."  Plaintiff does not seek, at this juncture, to dismiss the entire action; rather, as stated *supra*, he wishes to dismiss certain claims within this action . . . .   Rather than a Rule 41 dismissal, the Plaintiff should seek to amend his complaint by meeting the requirements of Rule 15.  "A plaintiff wishing to eliminate particular claims or issues from the action should amend the complaint under Rule 15(a) rather than dismiss under Rule 41(a)."  *Moore's Federal Practice 3d,* § *41,21[2]* (citing *Skinner v. First Am. Bank of Virginia*, 64 F.3d 659 (table), 1995 WL 507264 (4th Cir. 1995).

<u>Id.</u>, at 3-4 (citations omitted).  The Rule 41 dismissal is ineffective, and counsel for plaintiff is granted leave to amend his pleading within 14 days to comply with the instructions of <u>Gahagan</u>.

### N.    Unfair Trade Practice

Plaintiff also has asserted an Unfair Trade Practice claim against Southtrust Bank. As discussed immediately above, the Rule 41 dismissal is ineffectual in dismissing claims as opposed to actions, <u>see</u> <u>Gahagan</u>, <u>supra</u>, and plaintiff is granted leave to amend his pleading accordingly.

---

[3]        Inasmuch as this court maintains only an electronic file, citation to such decision is by reference, with a copy of that decision being available through PACER.

## VIII.  Judicial Immunity

As is clear from the allegations made by plaintiff in his Complaint, all the alleged unconstitutional acts of Judge Cilley and Clerk of Superior Court Melton ("the judicial defendants") were performed as a part and in the course of their regular judicial duty.  Judges are immune from imposition of an award of monetary damages for judicial acts, unless such acts are done in clear absence of all jurisdiction.  Stump v. Sparkman, 435 U.S. 349 (1978); Pierson v. Ray, 386 U.S. 547 (1967). A judge's immunity is not lost because he or she takes an action in error, even if such judicial acts are done maliciously or exceed their authority. Stump, at 356; Chu v. Griffith, 771 F.2d 79 (4th Cir. 1985).

In determining what is a judicial act, a reviewing court looks to whether the function is one normally performed by a judge and whether the parties dealt with the judge in his or her judicial capacity.  Forrester v. White, 484 U.S. 219 (1988).  Clearly, all of the acts plaintiffs takes issue with involve parties interacting with judges in their judicial capacities and such judges performing normal judicial acts, which  includes execution of proposed orders presented by an attorney.  The judicial defendants enjoy absolute immunity from the imposition of any money damages in this action and, and the undersigned will recommend that  plaintiff's claims for monetary damages against such defendants be dismissed.

## IX.    Qualified Immunity.

Sheriff Good and, in turn, his surety are also entitled to the protections of qualified immunity.  In obedience to facially valid Orders and Writs issued in furtherance of post-judgment collection procedures, a sheriff enjoys qualified immunity for civil damages. Aacen, supra, at 700-01.  Even if plaintiff could have alleged a cause of action and shown that the North Carolina statutory scheme was unconstitutional, qualified immunity would protect a sheriff unless the constitutional right is "clearly established."  Even where a debt

collection statute is unconstitutional, the sheriff who serves process and attaches property simply has no liability. <u>Aacen</u>, <u>supra</u>. Even if a sheriff's purported conduct had violated a clearly established rule of law, he would still be entitled to immunity if he reasonably believed that his conduct was lawful. <u>Anderson v. Creighton</u>, 483 U.S. 635, 638 (1987). <u>See also</u> <u>Malley v. Briggs</u>, 475 U.S. 335 (1986).

In <u>Mitchell v. Forsyth</u>, 472 U.S. 511 (1985), the Supreme Court held that qualified immunity is "immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." <u>Id.</u>, at 526. Qualified immunity is a question of law. <u>Adams v. St. Lucie County Sheriff's Department</u>, 962 F.2d 1563, 1566-67 (11th Cir. 1992). The court "considers in the light most favorable to the plaintiff all facts fairly inferable from the record--regardless of the existence of factual disputes--and decides whether, under those facts, defendant's conduct violated law clearly established at the time." <u>Bennett v. Parker</u>, 898 F.2d 1530 n.2 (11th Cir. 1990). A court must make an objective, although fact-specific, inquiry into the legal reasonableness of the conduct. <u>Anderson v. Creighton</u>, <u>supra</u>, at 641. The lawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable officer charged with knowledge of established law; a defendant's motives are irrelevant to the qualified-immunity inquiry. <u>Id</u>.

In this case, the facts are very simple: a deputy in the employment of Sheriff Good carried out the Order of the state court and the command contained in a Writ of Execution, and seized an asset. He was not privy to any of the underlying proceedings and had no lawful authority to question or second guess the state court. Indeed, to have done so would have been insubordination or contempt. To that end, the sheriff was carrying out a lawful duty imposed upon him by statute. Compliance with a facially valid law which no court had found

to be unconstitutional is objectively reasonable.  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aacen, at 701-02.  Legislative classifications are presumed to be constitutional, and absent extraordinary circumstances, liability will not attach to a sheriff when he executes official statutory duties he was appointed to perform.  Swanson v. Powers, 937 F.2d 965 (4th Cir. 1991), cert. denied, 60 U.S.L.W. 3478 (U.S. 1992).

The undersigned, therefore, must respectfully recommend that as an alternative basis for decision that all claims asserted against the sheriff and his surety be dismissed with prejudice based on qualified immunity.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that

(1)     this court **ABSTAIN** from consideration of plaintiff's first and second federal causes of action, and to **DISMISS** such claims without prejudice as to reassertion in a state forum, specifically in those proceedings now pending in the North Carolina General Court of Justice, District Court Division for Rutherford County, Honorable Robert S. Cilley, Judge Presiding;

(2)     that with the exception of the federal Fair Debt Collection Procedures Act (the third federal cause of action) and the interference with contract claim (the fifth state cause of action) as asserted against the Sessoms defendants, that all other claims asserted against all other parties be **DISMISSED** with prejudice for failure to state a claim;

**IN ADDITION and IN THE ALTERNATIVE,**

(3)     that all claims for money damages, if any, asserted against the judicial defendants be **DISMISSED** with prejudice;

(4)     that all claims asserted against Sheriff Daniel J. Good and Travelers Casualty and Surety Company of America, as surety for Sheriff Good, be **DISMISSED** with prejudice based on qualified immunity; and

(5)     that all claims asserted against Great American Insurance Company be **DISMISSED** with prejudice; and

(6)     that plaintiff be granted leave to effectuate the ineffectual dismissal of claims asserted against Southtrust Bank by and through amendment of his Complaint as provided by the district court in <u>Gahagan</u>, <u>supra</u>.


The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir.), <u>cert</u>. <u>denied</u>, 467 U.S. 1208 (1984).

**Signed: June 27, 2005**

Dennis L. Howell
United States Magistrate Judge